# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EVELYN MARCIAL ORTIZ,<br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br>J. GRONDOLSKY, Warden in his individual<br>capacity, RICHARD H. RUSSELL,<br>Associate Warden in his individual capacity,<br>and MICHAEL BOLLINGER, Captain<br>in his individual capacity,<br>    Defendants. | Civil Action No.<br>16-10595-TSH |

## MEMORANDUM AND ORDER

### December 5, 2017

### Background

Plaintiff, Evelyn Marcial Ortiz ("Plaintiff" or "Ortiz") brings an employment discrimination action against Defendants, the Federal Bureau of Prisons ("BOP") and several BOP employees: Warden Jeffery Grondolsky ("Grondolsky"), Associate Warden Richard H. Russell ("Russell"), and Captain Michael Bollinger ("Bollinger"). In her amended complaint (Docket No. 15)("Complaint"), Plaintiff alleges the Defendants deprived her of certain constitutionally protected rights under the First and Fourteenth Amendments in violation of 42 U.S.C. §1983 (Count I); discrimination based on sex or gender in violation of 42 U.S.C. §2000 *et seq*. ("Title VII") (Count II); discrimination based on race in violation of Title VII (Count III); discrimination based on sexual orientation in violation of Title VII (Count IV); retaliation for

engaging in protected activities in violation of Title VII (Count V); discrimination based on race in violation of Mass.Gen.L., ch. 151B (Count VI); discrimination based on gender in violation of Mass.Gen.L., ch. 151B (Count VII); discrimination based on sexual orientation in violation of Mass.Gen.L., ch. 151B (Count VIII); and retaliation for engaging in protected activities in violation of Mass.Gen., ch. 151B (Count IX)[1]. This memorandum and order addresses Defendants' Motion to Dismiss Complaint (Docket No. 23). For the reasons stated below, Defendants' motion is *granted* in part and *denied* in part.[2]

## Standard of Review

To withstand a 12(b)(6) motion to dismiss, a complaint must allege a claim that plausibly entitles the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 570, 127 S.Ct. 1955, 1967, 1974 (2007). Plausibility does not amount to probability but "it asks for more than a sheer possibility the defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1950 (2009). While a complaint does not need detailed factual allegations, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio–Hernàndez v. Fortuño–Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

While weighing a motion to dismiss, the court must take all of the well-pleaded factual allegations as true and "give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz*

---

[1] Title VII requires that a plaintiff exhaust her administrative remedies and receive a right-to-sue letter from the Equal Employment Opportunity Commission prior to bringing suit in a federal court. 42 U.S.C. § 2000e-5(f)(1). Plaintiff did not include this letter, or allege she received this letter, in her initial filings. At a hearing regarding this motion, however, Plaintiff's counsel asserted Ortiz has exhausted her administrative remedies, which the Defendants do not contest.

[2] Plaintiff does not oppose Defendants' motion to dismiss with regard to Counts I, IV, VI, VII, VIII, and IX of her Complaint. Accordingly, Defendants' motion is *granted* with regard to those Counts.

2

*v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir. 2007). In deciding whether a complaint states a "plausible claim for relief" the court undertakes a "context specific task" that necessarily requires it to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (internal citations omitted). A claim may be dismissed "if plaintiff's well-pleaded facts do not possess enough heft to show that plaintiff is entitled to relief." *Rhodes v. Owens Loan Servicing, LLC.*, 44 F. Supp. 3d 137, 140 (quoting *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 84 (1st Cir.2008) (internal quotations omitted)). However, a court may not neglect sufficiently pleaded factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

## Facts

Ortiz began working for the BOP in 1987. In 2008, she attained the rank of GL-11 Lieutenant. In March 2011, she was reassigned to the position of Escort Lieutenant. Ortiz alleges that from March 2011 through October 2014, she was subjected to "continuous and pervasive discriminatory treatment" because of her race, and gender (Plaintiff is Hispanic)[3]. Grondolsky, Russell, and Bollinger supervised the Plaintiff for the relevant period.

More specifically, Ortiz claims that numerous times during her employment with the BOP, Caucasian male lieutenants suffered lessened consequences for disobeying Bollinger's orders, while she was more severely disciplined for similar infractions. For example, a Caucasian male lieutenant improperly opened a cell door without ensuring an inmate was handcuffed, but was not disciplined for his behavior. However, when the Plaintiff opened a cell door while an inmate was not handcuffed, she was investigated and suspended for two days. On other

---

[3] Plaintiff has also asserted facts which allege that she was subject to harassment because of her sexual orientation (she is a lesbian). Since Plaintiff has agreed that her sexual orientation based claims mast be dismissed, I will not include asserted facts which relate only to the dismissed claims.

occasions, Caucasian male lieutenants were either not investigated or not severely punished for serious infractions, including misplacing $4,000.00 of escort equipment and leaving a weapon unattended at a local hospital.

On June 22, 2011, Ortiz was working in an office with multiple Caucasian corrections officers. As another Hispanic corrections officer entered the room, one of the Caucasian corrections officers told him "your sister is here," in apparent reference to the Plaintiff's Hispanic heritage. Four or five of the Plaintiff's subordinates heard the comment and laughed. On June 7, 2011, a department head/lieutenant meeting was held in which employees voiced their workplace concerns. Lieutenant Roberts and Lieutenant Allred, both Caucasian males, spoke for ten and fifteen minutes respectively and were not cut off even when they spoke harshly about the department. Bollinger cut the Plaintiff off from speaking after just one minute. On August 1, 2011, Ortiz noticed a sheet of paper on the window in the Control Center which stated, in big bold letters, "Attention! Please do not feed the Orangutans!" with a picture of an orangutan. The Plaintiff was "humiliated" by the sign, as this is traditionally a racist reference and she was "certain" that the sign was directed at herself and other persons of color. Plaintiff notified a Senior Officer, Bollinger, Special Investigative Services, and the Regional Director of the BOP that she was offended by the sign and asked that it be removed immediately. She received no response. Similar signs, including pictures of "Bubba Gump Shrimp" and a Rastafarian man with dreadlocks, remained hanging in the control room despite the Plaintiff telling multiple supervisors she found the signs offensive[4].

---

[4] The Complaint references "Exhibits A-F," which purport to be either pictures of certain offending materials or copies of Plaintiff's various complaints to Defendants and others. However, these exhibits were not included in the Plaintiff's filings with the Court. Since Plaintiff has provided a description of their content, her failure to include them with her filing does not alter the Court's analysis.

After an email from the corrections officers' union president on May 25, 2012, that instructed all corrections officers and union staff "not to heed any orders issued" by the Plaintiff, she again formally complained to all individually named Defendants about being subjected to "racial disrespect" and a "hostile working environment." Plaintiff received no follow-up on her complaints, and no investigation ever occurred.

On February 22, 2013, Officer John Hansen ("Hansen") physically assaulted Ortiz while they were in a seclusion unit by intentionally hip-checking her into the wall. Ortiz's version of the events was corroborated by another officer. Ortiz submitted a memo to Bollinger that Hansen assaulted and battered her, but received no response and had to work with Hansen the next day. On February 27, 2013, an inmate was given a rotten bag of cereal. Per Bollinger's instructions, Plaintiff exchanged the rotten bag for a new one and was given a six day suspension for doing so. Bollinger did not support mitigating the suspension despite the fact the Plaintiff replaced the cereal on his orders. Plaintiff was not able to appeal her suspension or present her position to either Grondolsky or Human Resources. Ortiz alleges that all these events, as well as others described in the Complaint, demonstrate discrimination on the basis of race and/or gender.

## Discussion

### *Claims Against Defendants in Their Individual Capacities*

Plaintiff's Complaint names Grondolsky, Russell, and Bollinger in their individual capacities. According to the Complaint, all three were BOP employees during the relevant period. It is well settled that "there is no individual employee liability under Title VII." *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009) (accepting reasoning of other circuits in holding individual employees cannot be liable in Title VII claims); *Horney v. Westfield Gage Co.*, 95 F. Supp. 2d 29, 35 (D. Mass. 2000). Accordingly, Counts II, III, and V are dismissed as

to the individually named Defendants. The Court will now address the sufficiency of Ortiz's claims against the BOP.

*Plaintiff's Claims for Gender and Race Discrimination in Violation of Title VII* [5]

Title VII makes it unlawful for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C.A. § 2000e-2(a)(1). Under a disparate treatment theory of employment discrimination, a plaintiff must demonstrate they were the victims of intentional discrimination. *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir. 1995). Disparate treatment claimants bear the burden of proving they were "subjected to different treatment than persons similarly situated in all relevant aspects." *Byrd v. Ronayne*, 61 F.3d 1026 (1st Cir. 1995) (citing *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994)). Complaints must be more than "merely conclusory regarding the characterization of the defendant's motives," and allege facts that give "rise to an inference of discriminatory animus." *Johnson v. General Electric*, 840 F.2d 132, 138 (1st Cir. 1988). Put differently, at the pleadings stage, the plaintiff must "outline specific facts, which if proven would entitle him to relief." *Christensen v. Lawrence F. Quigley Memorial Hosp.*, 656 F. Supp. 14, 16 (D. Mass. 1985). "Title VII's prohibition of discriminatory employment practices [also] extends to sexual harassment in the form of a hostile or abusive work environment. To prove a hostile work environment claim, the plaintiff must demonstrate that the complained-of conduct was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment. That environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that

---

[5] The relevant analysis is essentially the same for Plaintiff's racial and gender based discrimination claims, and for that reason, the Court will analyzes them simultaneously.

the victim in fact did perceive to be so. There is no precise formula for establishing sufficiently egregious conditions." *Rosario v. Dep't of Army*, 607 F.3d 241, 246 (1st Cir. 2010)(internal quotation marks and citations to quoted cases omitted). The analysis is the same for a claim based on a racially discriminatory hostile work environment. *See Wilson v. Moulison North Corp.*, 639 F.3d 1 (1st Cir. 2011).

For Title VII claims in which there is no direct evidence of discrimination, this Circuit employs the familiar burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *see also Cham v. Station Operators, Inc.*, 685 F.3d 87, 93 (1st Cir. 2012). Under *McDonnell Douglas*, if the plaintiff establishes her prima facie case of discrimination, a presumption arises "that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094 (1981)); *Sisco v. DLA Piper LLP*, 833 F. Supp. 2d 133, 148 (D. Mass. 2011). A plaintiff can establish a prima facie disparate treatment claim by showing: (1) she is a member of a protected class; (2) she was qualified for the position; (3) the employer took an adverse employment action against her; and (4) the position remained open, or was filled by a person with similar qualifications.[6] *Kosereis v. Rhode Island*, 331 F.3d 207, 212-213 (1st Cir. 2003). These precise elements may be tailored to fit the realities of particular cases, but generally "require, among

---

[6] Plaintiff's Complaint alleges in the introduction that Ortiz was ultimately terminated from her position, though it does not indicate when this occurred or under what circumstances. Further confusing matters is her claim of damages, which asks in part that she "be re-assigned to another facility of her choice." Setting aside exactly if or how the Plaintiff was terminated, at this stage it is adequate to state that Ortiz sufficiently pled facts suggesting she suffered adverse employment actions because of her race and/or gender, particularly in light of the First Circuit's broad interpretation of "adverse employment action." *See* discussion *infra* pp. 8-10; *See also Wyatt v. City of Boston*, 35 F.3d 13, 15-16 (suggesting adverse employment actions are not limited to "discharges" and include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees"); *DaCosta v. Town of Plymouth*, 2014 U.S. Dist. LEXIS 89454 at *64 (D. Mass. July 1, 2014) ("in order to demonstrate an adverse employment action, the plaintiff must show that a reasonable employee would have found a challenged action materially adverse") (internal quotation marks omitted).

other things, a showing of an adverse employment action." *Cham*, 685 F.3d at 93 (citing *Alvarado-Santos v. Dep't of Health*, 619 F.3d 126, 132 (1st Cir. 2010)); *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 997 (2002) ("the precise requirements of a prima facie [disparate treatment] case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic") (internal quotation marks omitted). The burden for establishing a prima facie discrimination case is low, variously described as "easily made" and "not … onerous." *Gillon v. Fallon Ambulance Services*, 283 F.3d 11, 30 (1st Cir. 2002); *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). To succeed with a Title VII gender/race hostile work environment claim, a plaintiff must prove: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment based upon her gender or race; and (3) there is a basis for employer liability. *Rosario*, 607 F.3d at 247 n.12.

Taking the factual allegations in the Complaint as true, the first three elements of the prima facie case of discrimination based on disparate treatment are satisfied. Ortiz is Hispanic and female, both protected classes under Title VII. She was qualified for her position, having worked for the BOP since 1987 and promoted to lieutenant in 2008. The Complaint alleges a number of adverse employment actions, the most recent being a six-day suspension. The fourth element presents a more difficult question. As noted, because establishing a prima facie disparate treatment case is not meant to be "rigid, mechanized, or ritualistic," "the precise requirements of a prima facie case can vary depending on the context." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992. Formulations of the fourth element differ based on the alleged facts. Generally, the First Circuit has held this fourth element to require "some evidence of a causal connection between her membership in a protected class and the adverse employment action." *Bhatti v. Trustees of*

8

*Boston University*, 659 F.3d 64, 70 (1st Cir. 2011); *See also Garmon v. AMTRAK*, 844 F.3d 307, 313 (1st Cir. 2016). Plaintiff contends her Complaint alleges facts demonstrating she was treated less favorably than other similarly situated employees, establishing a causal connection between the adverse employment actions and her membership in a protected class and thus satisfying the fourth element of the prima facie case. Even assuming this is correct, it is not clear that such comparative evidence is pertinent to Plaintiff's prima facie case. Generally, comparative evidence is deemed relevant at the third phase of the *McDonnell Douglas* framework to establish whether an employer's actions were a pretext. *Cham*, 685 F.3d at 94 n.4 ("'the time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual, when the need arises to test the pretextuality vel non of the employer's articulated reason for having acted adversely to the plaintiff's interests,' as opposed to as part of a plaintiff's prima facie case") (quoting *Kosereis*, 331 F.3d at 213), accord. *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 19 (1st Cir. 1999)).[7] Regardless, Plaintiff still satisfies the fourth element by alleging facts that plausibly demonstrate a causal connection between her race/gender and the adverse employment actions. While Plaintiff cannot state a valid disparate treatment claim based on neutral events she perceives to be discriminatory, the Complaint alleges numerous instances of adverse employment actions. *See Johnson*, 840 F.2d at 138 ("plaintiffs cannot be merely conclusory regarding the characterization of the defendant's motives; a subjective characterization of those motives will not suffice"). Ortiz was subject to multiple suspensions for

---

[7] Because the Court finds the Plaintiff has pled facts demonstrating a plausible connection between her race or gender and the adverse employment actions, see discussion *infra*, there is no need to dwell on the propriety of comparative evidence at this stage of the inquiry. It is worth noting, though, that other Circuits and other District Courts in this Circuit have used similar comparative evidence to establish the fourth element of disparate treatment prima facie cases. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-611 (6th Cir. 2002); *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 645-646 (3d Cir. 2015); *Weaver-Ferguson v. Boston Public Schools*, 2016 WL 1626833 at *3 (D. Mass. April 22, 2016); *Adkins v. Atria Senior Living*, Inc., 113 F. Supp. 3d 399, 412 (D. Me. 2015).

relatively minor infractions, including a six-day suspension for essentially obeying her superior's orders. Ortiz alleges that white male colleagues or committed similar infractions received less harsh discipline or were not disciplined at all. Other incidents, which I will discuss in the context of Plaintiff's hostile environment claims, support her contention that the incidents were not "facially neutral" as alleged by the Defendants, but were motivated by Ortiz's race or gender. These allegations are sufficient to state plausible claims for gender and race discrimination based on disparate treatment.

As to Ortiz's hostile work environment claims, I will focus on the second and third elements of the test. In determining whether she was subjected to unwelcome harassment based upon her gender or race, the Court considers "all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. Although [t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins, the 'accumulated effect' of repeated verbal attacks and physical intimidation in the workplace may reasonably be found to constitute … harassment within the meaning of Title VII. The harassing conduct need not be overtly sexual in nature. [W]here a plaintiff endures harassing conduct, although not explicitly sexual in nature, which undermines her ability to succeed at her job, those acts should be considered along with overtly sexually abusive conduct in assessing a hostile work environment claim." *Rosario*, 607 F.3d at 247 (internal quotation mark, internal citations and citations to quoted cases omitted).

Ortiz's co-workers displayed signs Plaintiff found to be racially and sexually insensitive, including the aforementioned Orangutan sign, pictures of "Bubba Gump Shrimp," and a picture

of a Rastafarian man.[8] She was barred from speaking longer than a minute at a department meeting where others spoke for ten to fifteen minutes. Additionally, white officers called Ortiz the "sister" of another Hispanic employee, an email instructed employees to disregard orders issued by her, and she was assaulted by a white, male officer. Importantly, for purposes of the third element, Ortiz made frequent complaints to her supervisors about what she believed to be discriminatory and harassing practices towards her over the three-year period and received either a limited response or no response at all. The fact that no one at the BOP responded substantively to the Plaintiff's complaints over that period suggests the Defendants at best did not consider her concerns serious; at worst, her complaints were deliberately ignored. Accordingly, viewing the allegations in the Complaint as a whole, the pleaded facts at least state a plausible claim that Ortiz was subject to a hostile work environment because of her race or gender.[9] Keeping in mind that the burden for establishing a prima facie case is "not onerous," Defendants' motion to dismiss as to Counts II and III is denied.

*Whether Plaintiff Has Stated a Claim for Retaliation in Violation of Title VII*

Title VII also prohibits employers from retaliating against employees who have engaged in specific protected activities, including opposing "any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Protected activities include "responding to an employer's inquiries about inappropriate behavior, writing letters protesting an employer"s

---

[8] At this stage of the proceedings, the Court assumes the Plaintiff's allegations as true, including her allegations that Ortiz's colleagues hung these signs in the workplace. Frankly I doubt that the Court need consider any incidents beyond the display of these highly offensive signs to find that Ortiz has stated *plausible* hostile work environment claims. That the signs were inexplicably not removed when Ortiz complained to higher-ups and other incidents alleged by Ortiz and discussed above lend further support to her claims.

[9] Admittedly, the allegations regarding her gender based hostile environment claim are sparse, but we are at the pleading state and as noted previously, the First Circuit has stated that the harassing conduct need not be explicitly sexual in nature.

11

allegedly unlawful actions, or picketing and boycotting an employer." *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 108 (1st Cir. 2015).

Claims of retaliation arising from Title VII may survive a motion to dismiss if they, like disparate treatment claims, allege facts that demonstrate a prima facie case of discriminatory retaliation. "In order to make out a prima facie case of retaliation, …[a plaintiff has] to prove that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." *Fantini*, 557 F.3d at 32 (quoting *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 22 (1st Cir. 2002)). As to the first element, a plaintiff must demonstrate their "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Id.* (quoting *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999), cert. denied, 528 U.S. 964, 120 S.Ct. 398 (1999)). To be adverse, an employment action "must materially change the conditions of plaintiff's employ." *Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002). The harm must be sufficient to dissuade a "reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006). As to the third element of the prima facie case, the facts must demonstrate a "retaliatory motive" underlying the adverse employment action. *Hazel v. U.S. Postmaster General*, 7 F.3d 1, 3 (1st Cir. 1993); *See also Williams v. Raytheon Co.*, 220 F.3d 16, 21 (1st Cir. 2000). A causal connection can be demonstrated in a number of ways, including evidence of "differential treatment in the workplace … temporal proximity of an employee's protected activity to an employer's adverse action … [or] comments by the employer which intimate a retaliatory mindset." *Mesnick v. General Electric Co.*, 950 F.2d 816, 828 (1st Cir. 1991). Evidence of disparate disciplinary treatment between similarly situated employees may also

indicate causation. *Sumner v. U.S. Postal Service*, 899 F.2d 203, 210 (2ᵈ Cir. 1990) (evidence that more serious infractions by employees similar to plaintiff were not disciplined, after plaintiff filed formal complaint, was "important" to establish retaliatory motive). While close temporal proximity between the protected activity and adverse employment action may demonstrate causation, long durations between the same do not. *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1ˢᵗ Cir. 2008) ("our law is that temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation"); *Oliver v. Digital Equipment Corp*, 846 F.2d 103, 111 (1ˢᵗ Cir. 1988) (no "strong suggestion" between plaintiff's filing race discrimination claim and termination because of two year gap between them); *Mullenix v. Forsyth Dental Infirmary for Children*, 965 F. Supp. 120, 150 (D. Mass. 1996) (approximately three months between plaintiff filing discrimination lawsuit and termination "indirect proof of causal connection" between the two); *Cf. Rock v. Lifeline Systems*, 2015 WL 6453139 at *14 (D. Mass. Oct. 23, 2015) (examining precedent on establishing causation in retaliation claims through evidence of temporal proximity, noting that even "a gap of six months may be insufficient" to establish causation).

Defendants concede that Ortiz submitted multiple complaints about discriminatory actions in the workplace. Ortiz clearly had a good faith belief that the Defendants' actions were discriminatory and thus violated the law. Defendants also do not seriously contest that Ortiz suffered an adverse employment action in the form of a six-day suspension, a serious enough punishment to materially alter her position at the BOP. Thus, the first two elements of a prima facie retaliation case are satisfied. However, Defendants contend the Complaint fails to allege facts plausibly suggesting a causal connection between the adverse employment actions and Ortiz's complaints. I find, however, that at this stage of the proceedings, the Complaint

establishes causation between the adverse employment action and the protected activity based on the temporal proximity between Ortiz's February 22, 2013 complaint and her February 27, 2013 suspension. Her complaint came in the form of a memorandum to Bollinger regarding the physical altercation between the Plaintiff and Hansen. Only five days later, Ortiz was suspended for following Bollinger's orders to replace an inmate's bag of cereal. The brief duration between the two events, both involving the same supervisor, suggests a causal connection. *See DeCaire*, 530 F.3d at 19; *Mullenix*, 965 F. Supp. at 150. This inference is bolstered by other facts in the Complaint that the Plaintiff repeatedly complained to the Defendants about the perceived discriminatory practices, and the Defendants failed to adequately respond to or investigate any of them. *Mullenix*, 965 F. Supp. at 150; *See also Mesnick*, 950 F.2d at 828 (reading the record "as a whole" to determine whether Plaintiff established prima facie retaliation case). The alleged facts, taken as true, establish a prima facie case of retaliation that is plausible on its face. Defendants' motion to dismiss as to Count V is, therefore, denied.[10]

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Complaint (Docket No. 23) is ***granted*** in part and ***denied*** in part as provided in this Memorandum and Order.

/s/ *Timothy S. Hillman*
TIMOTHY HILLMAN
DISTRICT JUDGE

---

[10] The Court concludes for the purposes of this Memorandum and Order that the Plaintiff's Complaint states plausible claims for which relief could be granted. The Court obviously takes no position and does not by any of its rulings intend to make any inferences regarding whether the Plaintiff's claims would be tenable at either the summary judgment or trial stages.

14